1st of February, 1907, two payments of $1,000 each in March, 1907, and that in April he received $1,000, and in May either $1,000 or $1,300, and the last payment on June 25th or 26th. The defendant contractor counterclaimed for damages arising out of the failure of the plaintiff corporation to deliver all the materials covered by the contract.

Judgment was rendered in favor of the plaintiff against the defendant owner, Minka, and the defendant contractor, Masche, for the foreclosure of the lien, in accordance with the prayer of the complaint. The defendant owner, Minka, appeared and answered the complaint, but was not present at the trial of the action. The plaintiff did not show any money in the hands of the defendant owner, Minka, due the contractor, Masche, at the time the lien was filed; but, on the contrary, the defendant Masche testified that he received all the money from the owner, Minka, before the filing of the lien. Under this evidence it cannot be said that the delivery of the parting strips by Angus, the cashier of the plaintiff, on June 10, 1907, constituted a delivery of materials, so as to validate the lien filed July 24, 1907, while it clearly appears that the defendant Minka, the owner of the premises mentioned, had paid over to the defendant Masche, the contractor, all the moneys due him on account of the contract for the building of the house before the filing of the lien. The lien is therefore invalid, and this judgment foreclosing the said lien cannot stand.

Section 3412 of the Code states that:

"If the lienor shall fail for any reason to establish a valid lien, * * * he may recover judgment therein for such sums as are due him, on which he might recover in an action on a contract against any party to the action."

Upon a new trial, therefore, plaintiff may be able to show itself entitled to a recovery, even if it fails to substantiate its lien.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event.

---

### BIEHL v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. May 7, 1909.)

MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE.

Though the engineer, who, in the nighttime, ran a train into one standing at a section, injuring a brakeman on the standing train, was unfamiliar with that part of the road, having been over it but once, three months before, it was error to submit to the jury the question whether the company should have supplied the engineer with a pilot familiar with the road, as it was shown other roads did under similar circumstances, and as the company in question had done at times; there being no extraordinary circumstances connected with such piece of road, and the company having established a rule that trains must be in complete control in entering yard limits, and set a conspicuous white sign at the yard limit, 1,500 feet from the accident, observance of which sign and rule would have prevented the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1000; Dec. Dig. § 286.*]

Gaynor and Miller, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Orange County.

Action by Joseph Biehl against the Erie Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Henry Bacon, for appellant.

Rosslyn M. Cox (Abram F. Servin, on the brief), for respondent.

WOODWARD, J. The plaintiff, a fireman employed by the defendant, was seriously injured, while properly in the caboose of his train eating his lunch at about 9 o'clock in the evening, while his train was standing at the station at Englewood, in the state of New Jersey; the accident being due to a rear-end collision. The defendant was operating a second train, following the one on which the plaintiff was employed, and it is not questioned here that the accident was due to the negligent act of one McKim, the engineer of the second train, who ran into the first train at the rate of from 12 to 30 miles per hour. There is no question that McKim was a competent engineer. He had been employed by the defendant for several years in that capacity, and, so far as the record shows, without fault. McKim was not familiar with this particular piece of road operated by the defendant, he having made the run but once before, some three months prior to the accident, and the only question of negligence submitted to the jury was whether the defendant owed the plaintiff the duty of furnishing a pilot, or an extra engineer, who was familiar with the road; evidence being adduced to show that other roads employed such pilots under similar circumstances, and that the defendant had done so at times. There was no dispute that the defendant had established a rule that trains must be in complete control in entering yard limits, that such rules were contained upon a time-card furnished to the engineer, and that the time-card showed that there was a yard limit established at Englewood, and that it was the duty of the engineer to familiarize himself with the rules, and it does not appear to be questioned that the defendant had set a conspicuous white sign at the yard limit, at a distance of some 1,500 feet from the point of the collision, or that, if the train had in fact entered the yard limits under the provisions of the defendant's rules, the accident could not have happened. The learned trial court practically charged all of these things, but told the jury that it was for them to say whether the defendant should have supplied a pilot under the circumstances of this case.

We are of opinion that the exception to this portion of the charge presents reversible error. The court charged, without exception, that the rule "was a sufficient and proper rule for the regulation and conduct of the engineers and employés of this company in such places," and if this was true, and if, with the observance of this rule on the part of McKim the accident would not have happened, the proximate cause of the accident was not the negligence of the defendant, but of

a fellow servant of the plaintiff, for which the defendant is not liable. As was said in the recent case of Pearsall v. N. Y. C. & H. R. R. R. Co., 189 N. Y. 474, 478, 82 N. E. 752, 754:

"The real question is, not whether the defendant adopted by its rules the safest plan that could be devised for guarding against accidents, but whether the rules in force were reasonably sufficient, when observed, to protect its servants from such accidents as resulted in personal injury to the plaintiff in this case."

The defendant had discharged its whole duty by the plaintiff when it had furnished him a reasonably safe place in which to perform his services, when it had supplied a sufficient number of men and proper equipment, and had promulgated rules which, if obeyed, would afford reasonable protection to him. There is no question whatever that obedience to the rule as to yard limits was entirely within the power of the engineer and those operating the train. They could obey the rule just as well without a pilot as with one, and if the rule had been violated with a pilot on the engine the result would have been exactly the same. The yard limit was fixed and properly marked, the rules called attention to the same, and there were no such extraordinary circumstances in connection with this particular piece of railroad that any reasonably competent engineer might not have operated the train with perfect safety within the rules which it was his duty to observe. The accident did not occur because of any peculiarity in the railroad. It was, so far as appears from the record, a very ordinary railroad operated by steam, and the accident occurred, not because there was not a pilot, but because the engineer failed to acquaint himself with the rules which the defendant had prepared and supplied for his government, and to observe the markers which the defendant had erected for his guidance. These things are all familiar to men who have had experience in operating locomotive engines. It is their duty to be looking out for just such things, and the mere fact that some other railroads, or that even the defendant, has, under certain circumstances, supplied a pilot, perhaps for the better protection of its passengers, does not make it its duty to protect its employés by the exercise of extraordinary vigilance. It owes merely the duty of reasonable care, and this is fulfilled when it has provided rules which, when observed, are adequate to protect them. This the defendant had done in the case now before us, and it was error to let the jury speculate as to what might have been if the defendant had supplied a pilot. The method adopted by the defendant for transacting its business at the point in question was reasonably safe, it depended merely upon competent men performing their duties to insure safety, and that is all that can be required. Pearsall v. N. Y. C. & H. R. R. R. Co., 189 N. Y. 479, 82 N. E. 752.

The judgment and order appealed from should be reversed.

JENKS and RICH, JJ., concur.

GAYNOR, J. (dissenting). The engineer ran his train into the yard limits of a station and a train standing there at high speed, seriously injuring the plaintiff, who was fireman on the standing train. The said

engineer had never been over that section of the road before, except that he had run an engine over it three months before. There was a warning sign up on the track at a point outside of the yard limits, and there was a rule requiring engineers to slow down and have their engines under control after such signs and while in yard limits. But on the whole evidence it was permissible for the jury to find, as they did, that the engineer failed to see the warning yard sign because of his lack of familiarity with the road. An engineer has to look out for and observe a considerable number of things, and it is plain that on a road and in a locality that he is unfamiliar with he is quite likely to miss some warning sign or signal. For that reason pilots are sent with engineers who are new to a route. There was evidence that the custom is to send some one along with a strange engineer who is familiar with the route, and the defendant failed in this duty, i. e., to furnish competent fellow servants to the plaintiff. The said rule to slow down, etc., does not exempt the defendant in such a case. The accident did not happen from a negligent failure of the engineer to obey the rule, but from the negligence of the defendant in not manning the engine with some one sufficiently familiar with the road and locality to know where such signs were and not to be likely to miss some of them.

The judgment should be affirmed.

MILLER, J., concurs in this dissent.